**Walter v. Travelers Insurance Company**

*Donald B. Hoyt*, for plaintiffs.
*Mark Woodbury, III*, for defendant.

RAUHAUSER, *J.*, October 2, 1984—On June 21, 1983, this court entered an order granting summary judgment to plaintiff for damages in excess of $15,000 plus interest and costs of suit. Defendant now files exceptions to that order, listing four assignments of error.

The summary judgment order was based upon the court's analysis of an issue theretofore not briefed by counsel. Upon consideration of the arguments of counsel offered in regard to defendant's exceptions, and after careful reflection upon our prior reasoning, the court is of the opinion that defendant's exceptions must be granted.

## I. DEFENDANT'S EXCEPTIONS

Plaintiff Paul J. Walter was, at all times relevant to this case, employed by Johnston Construction Company, of York, Pa., having begun his employment there on December 17, 1979. As a fulltime employee at Johnston Construction Company, Paul J. Walter was entitled to participate in a group

health insurance plan underwritten by defendant, The Travelers Insurance Company. The insurance policy provided that coverage would commence after the completion of two months of service to the employer, at which time all eligible dependents of the employee would also receive coverage. ("Group Insurance Benefits" Booklet, p. iii.)

A daughter, Cynthia L. Walter, was born to plaintiffs on January 30, 1980 at Hanover General Hospital, York County, Pa. Doctors detected a serious problem with the child's heart, and on February 12, 1980, Cynthia L. Walter was admitted to Johns Hopkins Hospital in Baltimore for cardiac surgery. The operation was performed on February 15, and Cynthia was discharged from the hospital on February 27, 1980. In connection with Cynthia L. Walter's hospitalization and surgery, plaintiffs incurred a hospital bill of $10,550.93 and physicians' fees of $4,705. Defendant has refused to make payment for any of these expenses, claiming that they were not covered under the terms of the insurance policy.

The coverage provisions of the group insurance policy are contained in a booklet entitled "Group Insurance Benefits." The relevant provisions are reproduced below. (Paragraph numbers are supplied by the court in order to facilitate future reference to these provisions.)

(1) A pre-existing condition is any sickness or injury for which medical care and treatment is received by you or your Dependent during the 3 month period ending on the date of coverage. In the event of a pre-existing condition, coverage for that condition will be postponed until 3 consecutive months have elapsed during which no care or treatment has been received. (Booklet, p. 32).

(2) If a dependent, *other than a newborn child,* is confined in a hospital . . . on the date he becomes

covered, he will not be covered under the Major Medical Expense Benefits part of the insurance until 30 days have elapsed during which he has not been so confined . . . (Booklet, p. 6) (Emphasis added.)

(3) No payment shall be made under any health benefit of the policy in any event for:

• • •

4. Charges on account of a Dependent for any medical expense incurred during or in connection with a hospital confinement which commenced prior to the date the Dependent became covered under the policy. (Booklet, p. 40).

The fact that Cynthia L. Walter is an eligible dependent of Paul J. Walter is not in dispute. It also appears that the parties are willing to agree that plaintiffs and their daughter became covered under the policy on February 15, 1980, the 60th day of Paul J. Walter's employment at Johnston Construction Company. Thus, it is clear that Cynthia L. Walter was admitted to Johns Hopkins Hospital three days prior to the date her insurance coverage commenced. The only disputed issue in the present posture of this case is the manner in which the above-quoted insurance policy provisions should be interpreted and applied to the given circumstances.

Plaintiffs invoke paragraph 2 to support their contention that, as a "new-born child," Cynthia L. Walter was expressly exempted from the condition postponing coverage of a dependent who is hospitalized on the date when coverage would otherwise begin. Since the precondition of nonhospitalization is waived in the case of newborn children, Plaintiffs reason, Cynthia L. Walter became covered on February 15, 1980 and is entitled to benefits in the amount of all medical expenses incurred on or after that date.

Defendant argues strenuously that Cynthia L. Walter was not a "newborn child" within the meaning of paragraph 2, because she had been discharged from the hospital where she was born. We find no merit in this argument. Webster's Third New International Dictionary (1968) defines "newborn" as "recently born." Cynthia L. Walter, who was little more than two weeks old on February 15, 1980, would seem to fall under that definition. If, when drafting its Benefits Booklet, defendant intended to postpone coverage to hospitalized two-week-old infants who had been discharged from the hospital of their birth, then defendant had a duty to define its terms with greater precision. A vague or ambiguous provision in an insurance policy will be interpreted against the insurer and in favor of coverage. Miller v. Prudential Ins. Co. of America, 239 Pa.Super. 467, 362 A.2d 1017 (1976); Celley v. Mutual Benefit Health and Accident Association, 229 Pa.Super. 475, 324 A.2d 430 (1974).

Having determined that Cynthia L. Walter was a "newborn child" within the meaning of paragraph 2, we now arrive at the decisive issue of the present dispute. In our prior opinion, this court held that a patent inconsistency existed between the provisions of paragraph 2 and paragraph 3 of the policy and that the conflicting terms and conditions should be construed against defendant insurance company as drafter of the policy.

Paragraph 2 extends immediate coverage to a "newborn child" on the same day that her parent becomes covered under the policy, despite the fact that the infant happens to be hospitalized at the time. The newborn child's major medical benefits begin immediately and are not postponed until 30 days after discharge from the hospital, as would be the case with other dependents of the policyholder.

Paragraph 3, on the other hand, clearly provides that no benefit of any kind will be paid to cover medical expenses incurred by a dependent during a hospital confinement which began prior to the date of coverage.

In reconsidering the correlative effect of these two clauses, we are mindful of the standards governing the construction of insurance contracts. Any ambiguity in the language of an insurance document is to be read in a light most strongly supporting the insured. Mohn v. American Casualty Company of Reading, 458 Pa. 576, 326 A.2d 346 (1974). Yet, the language of an insurance policy should be read to avoid ambiguities, if possible. Monti v. Rockwood Insurance Co., 303 Pa. Super. 473, 450 A.2d 24 (1982). Applying these standards to the policy in question, we conclude that no ambiguity exists and that paragraphs 2 and 3 are plainly susceptible of an interpretation rendering them consistent with each other.

Reading paragraph 3 in conjunction with paragraph 1, there can be no doubt that defendant refuses to make payments for expenses relating to pre-existing medical conditions or other medical expenses to which the policyholder or his dependent is already committed prior to the effective date of coverage. Although dependent who is a "newborn child" receives immediate coverage on the same day that the policyholder becomes covered, the coverage is prospective; it applies to future medical expenses but not to medical expenses incurred during a hospitalization which began prior to the coverage date. The purpose of the paragraph 2 exemption is to provide coverage for hospitalized infants immediately upon their discharge from the hospital, thus exempting them from the 30 day waiting period.

Paragraph 2 cannot be construed to avoid the mandate of paragraphs 1 and 3.

This interpretation leads to the unavoidable conclusion that the language of the policy would deny coverage in the present case. Cynthia L. Walter was admitted to the hospital for cardiac surgery on February 12, 1980. Paul J. Walter did not become covered until three days later on February 15, 1980. Although Cynthia L. Walter received coverage on February 15 for future medical expenses, the policy does not entitle her to receive benefits for the expenses incurred during the hospitalization in question.

Whereas summary judgment for plaintiffs on the basis of the insurance contract is inappropriate, we reverse our prior opinion and vacate the order granting summary judgment to plaintiffs.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

We now shift our attention to defendant's motion for summary judgment and address for the first time the issues raised by defendant's brief in support of its motion and plaintiff's brief in opposition thereto.

Plaintiff's complaint seeks a reformation of the insurance contract, asking the court to rewrite the insurance policy so that the hospitalization of plaintiff's daughter will fall under the coverage of the policy. Plaintiffs argue that Rempel v. Nationwide Life Ins. Co., 471 Pa. 404, 370 A.2d 366 (1977), and Restatement of Torts §552 (1977) authorize the court to effect a reformation of the policy in order to bring it into conformance with the negligent misrepresentation of one of defendant's agents.

The facts in support of plaintiff's cause of action are not disputed. On February 12, 1980, plaintiffs' daughter was admitted to Johns Hopkins Hospital from the Emergency Room. On the hospital's preadmission questionnaire, plaintiffs indicated that they weren't sure whether or not insurance coverage had commenced, but they believed that the effective date of coverage was February 16, 1980. Following the admission of Cynthia L. Walter, the hospital independently called defendant on two occasions in order to verify the insurance status of plaintiffs. On both occasions the hospital was informed by an employee of defendant that plaintiffs would receive complete insurance coverage from the date of their daughter's admission. This information was duly relayed to plaintiffs.

Plaintiffs now argue that defendant waived the two-month waiting period for coverage to commence by its negligent misrepresentation that coverage existed prior to the termination of that period. Alternatively, plaintiffs contend that defendant is estopped from invoking the two-month waiting period to deny coverage because of plaintiffs' reasonable reliance upon the misrepresentation. Defendant, moving for summary judgment, submits that the doctrines of waiver and estoppel do not apply to the mistake of its employee.

The crucial question in any summary judgment motion is whether there is a genuine issue as to any material fact. A motion for summary judgment may be granted only if the pleadings, depositions, answers and interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035: 6 Standard Penna. Practice 2d, §32:6.

In the present case, the court finds that there is no genuine issue as to any material fact, making this a proper case for entry of summary judgment. Upon examination of the entire record, we hold that the law will not sustain plaintiffs' cause of action.

In support of their theory of the case, Plaintiffs rely heavily upon Rempel v. Nationwide Life Insurance Co., 471 Pa. 404, 370 A.2d 366 (1977). In Rempel, the holder of a mortgage protection life insurance policy asked a Nationwide agent if Nationwide could match a policy offered by a competing insurance company that would provide the same mortgage protection with an additional $5000 of life insurance for only a slight increase in premiums. The agent checked with Nationwide and returned with a policy which he represented as providing the protection sought. When, upon the policyholder's death, the beneficiary was informed that the policy did not provide the benefits she had been led to expect, she sued to reform the policy to conform with the agent's representations. In affirming a jury verdict for the beneficiary, the Supreme Court expressly adopted section 552 of the original Restatement of Torts, which reads:

"One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if

(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

(b) the harm is suffered

(i) by the person or one of the class of persons for whose guidance the information was supplied, and

(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence

his conduct or in a transaction substantially identical therewith." Rempel, along with the great bulk of Pennsylvania case law on the subject, leaves no doubt that the policyholder who wishes to avoid the plain language of his insurance contract must first establish that he has altered his conduct in justifiable reliance upon the representations of the insurance company. "To work an estoppel, there must be such conduct on the part of the insurer as would . . . operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon." Pfeiffer v. Grocers Mut. Ins. Co., 251 Pa. Super. 1, 6, 379 A.2d 118 (1977); Wasilko v. Home Mut. Cas. Co. 210 Pa. Super. 322, 328, 232 A.2d 60, 63 (1967).

In Rempel, the policyholder had refrained for ten years from switching insurance companies in reliance upon Nationwide's representation that the policy provided the coverage he desired. Accordingly, the court exercised its power to compensate the policyholder's beneficiary for the injury caused by Nationwide's misrepresentation.

The present case is unlike Rempel in the sense that the critical element of reliance is not present. Cynthia L. Walter had already been admitted to the hospital, and plaintiffs were already committed to the full amount of expense which they now seek as damages when they heard, for the first time, that defendant had agreed to provide major medical coverage. While this news undoubtedly elated plaintiffs, they neither acted nor refrained from acting in reliance upon the information. Indeed, it was impossible for them to alter the course of events after hearing that coverage existed, for their daughter's care had already passed out of their hands. In their depositions, both plaintiffs agreed that after their daughter was admitted to Johns Hopkins Hospital,

all decisions relating to the child's care and treatment were left, as they properly should have been, to the discretion of the attending physicians without regard of expense.

As Restatement of Torts, §552, is of no avail to plaintiffs, so is the absence of detrimental reliance fatal to their theories of waiver and estoppel. The law is clear on this point: that an insurance company's mistaken representation is no cause to extend coverage beyond the policy limits under any theory or cause of action unless the policyholder has materially altered his position in justifiable reliance upon the misrepresentation. In Pfeiffer v. Grocers Mut. Ins. Co., supra, 251 Pa. Super. at 6, 379 A.2d at (1977), the Superior Court stated the proposition in unyielding language:

"[O]ur Courts [has] specified the tests for determining when the doctrines of waiver and estoppel preclude an insurer from arguing that coverage under an insurance policy does not extend to a particular incident: "The rule is well established that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from the conduct or action of the insurer. The doctrine of implied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom."

• • •

In Pennsylvania, the doctrine of waiver or estoppel cannot create an insurance contract where none existed. (Citations and footnotes omitted.)

It is apparent that plaintiffs have suffered no injury from the misrepresentation made by defendant's employee. When they arrived at the hospital, they had no expectation of receiving insurance benefits.

The quantity and quality of medical care provided to their daughter and the corresponding amount of medical expenses incurred would have been identical if the misrepresentation had never been made, for the presence or absence of insurance coverage was not a factor to be weighed in deciding the best course to follow in order to ensure the child's good health.

Whereas, plaintiffs did not rely to their detriment upon the mistaken statement of defendant's employee, the question of defendant's liability was controlled by the language of the insurance policy. As we have already explained the policy provided no coverage for the hospital treatment in question. Accordingly, the court must grant defendant's motion for summary judgment and discharge the complaint.

## ORDER

And now, this October 2, 1984, upon consideration of defendant's exceptions, defendant's motion for summary judgment previously denied, and the arguments of counsel for both parties, it is hereby ordered that defendant's exceptions are granted. The opinion of this court rendered on June 21, 1983 in the above-captioned matter is reversed, and the order granting summary judgment to plaintiff is vacated. It is further ordered that summary judgment be entered in favor of defendant.

It is so ordered.