

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2002

# Laken v. Fryer Grp Co

Precedential or Non-Precedential:

Docket 00-4302

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Laken v. Fryer Grp Co" (2002). *2002 Decisions.* Paper 220.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/220

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 00-4302


EVELYN LAKEN; ALAN LAKEN, as a party in his own
right and as Executor of the Estate of Morton Laken

v.

FRYER GROUP OF COMPANIES, Unincorporated Association;
PARK SECURITIES, LTD.; KEITH FRYER; NAOMI LESLIE FRYER;
NICOLE EPSTEIN; MICHAEL FRYER; MARK FRYER; CENTRAL
SECURITIES, LTD.; NEWHALL SECURITIES, LTD.; TRICORN
TRUST, LTD.; EQUITY INVESTMENTS, LTD.; RONALD JAY BAYER, Esq.

Ronald Jay Bayer, Esquire,

Appellant.


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 97-cv-04413)
District Judge:  Honorable John P. Fullam


Argued:  January 16, 2002

BEFORE:  SCIRICA, GREENBERG and BRIGHT, Circuit Judges

(Filed: March 27, 2002)


MEMORANDUM OPINION OF THE COURT


Jeffrey B. McCarron, Esq. (Argued)
Swartz, Campbell & Detweiler
1601 Market St., 34th Floor
Philadelphia, PA  19103
Counsel for Appellant

James J. West, Esq. (Argued)
105 N. Front St.
Harrisburg, PA  17101
Counsel for Appellees


BRIGHT, Circuit Judge.

    I.   Introduction
    Much of the factual background of this lawsuit is described in the related case,
Westport Ins. Corp. v. Bayer, __ F.3d __ (3d Cir. 2002).  We refer the reader to that
opinion for a more complete statement of the facts than we present here.  In this opinion

we develop only those facts necessary to our holding.

Beginning in 1994, Morton and Alan Laken, father and son, solicited by their friend, Leonard Brown, made a series of investments in a sham mortgage business Keith Fryer claimed to run in England. In reality, Fryer ran a Ponzi-type confidence scheme in which he borrowed money from investors on installment notes that listed high interest rates. Fryer paid interest to early investors using money received from later investors. By the time Fryer's scheme was exposed, the Lakens had purchased a total of $678,009.59 worth of installment notes and received no money in return.

Bayer, Brown's friend and attorney, negotiated Brown's commission arrangement with Fryer, under which Brown received a percentage of the investments he solicited from others, like the Lakens. Bayer received one-third of all commissions due Brown.

In July 1997, the Lakens filed suit in federal district court against Bayer, Fryer, Fryer's corporations, and the officers of those corporations. The Lakens alleged RICO violations by all defendants except Bayer, and stated various state law claims against all defendants. In October 1997, the district court entered default judgment against Keith Fryer. Also in October, Bayer moved the court to dismiss the state law claims against him without prejudice pursuant to the supplemental jurisdiction statute, 28 U.S.C. 1367. The court denied the motion. Bayer was the sole defendant remaining when the Lakens' suit came to trial on November 16, 2000. The district court issued a decision finding for the Lakens and against Bayer on their negligent misrepresentation claims. The court entered judgment in the Lakens' favor for $678,009.59.

In its memorandum decision, the district court found the following facts regarding Bayer's actions and his relationship to the Lakens. The Lakens never retained Bayer to act as their attorney, but Bayer created the impression that he was "looking out for" the Lakens' interests. Bayer permitted the Lakens to believe that he had "checked out" Fryer's activities. The Lakens relied on the information they received from Bayer. Bayer claimed to have done a "due diligence" investigation and let it be known that he had gone to England as part of the investigation. In reality, Bayer investigated very little.

The trial court concluded that these facts provided a basis for Bayer's liability. The gist of the trial court's holding is the following:

> At no time did Mr. Bayer make any attempt to verify the existence of any of Mr. Fryer's corporations, or his credit rating. Even the most perfunctory investigation would have disclosed that the alleged corporations did not exist, and that Mr. Fryer had judgments recorded against him totaling more than $2 million. It would also have been relatively easy to establish the fact that Mr. Fryer's license to lend money had been revoked because of his earlier usurious activities.
>
> There thus can be no question about the fact that Mr. Bayer was negligent  indeed, grossly negligent. He apparently allowed the prospect of a high rate of return on his own investments, and lucrative finder's fees, to cloud his judgment.

Laken v. Fryer Group of Cos., No. 97-4413, slip op. at 9 (E.D. Pa. Nov. 17, 2000).

Bayer appeals the judgment, arguing: (1) the district court lacked subject matter jurisdiction over the Lakens' claims against Bayer; (2) there was insufficient evidence to establish Bayer's liability for negligent misrepresentation; and (3) the Lakens' recovery is barred by their contributory negligence.

II. DISCUSSION

A. Jurisdiction

The district court initially had federal question subject matter jurisdiction in this action due to the RICO allegations against all defendants but Bayer. Given the common nucleus of operative facts, there is no question that the state law claims against Bayer were properly before the court under 28 U.S.C. 1367(a) as long as the federal claims against the other defendants remained.

The Lakens voluntarily dismissed the federal claims against several defendants and the district court entered default judgment against another. Eventually, Bayer was the only remaining defendant. Bayer asserts that because the Lakens brought only state law claims against him, the district court did not have subject matter jurisdiction to enter judgment against him when he was the only defendant.

"[W]here the claim over which the district court has original jurisdiction is

dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780,788 (3d Cir. 1995).

We conclude that judicial economy, convenience, and fairness to the parties were all served by the district court retaining jurisdiction of this case.  The case had been in the district court since 1997.  Requiring the parties to start over in state court would be inconvenient as well as a waste of judicial resources.  The district court properly exercised jurisdiction to hear this case.

### B.    Negligent Misrepresentation Claims

The district court sat as fact finder in this case.  We review the court's findings of fact only for clear error.  See Fed. R. Civ. P. 52(a).

Under Pennsylvania law (as stated in the Restatement (Second) of Torts   552(1)):

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

See Rempel v. Nationwide Life Ins. Co., Inc., 370 A.2d 366, 367-68 (Pa. 1977); Eisenberg v. Gagnon, 766 F.2d 770, 778 (3d Cir. 1985).

The district court concluded that Bayer incurred a duty when he held himself out as an attorney who endorsed investment with Fryer and who had investigated Fryer's businesses.  Bayer knew that others considered him to be looking out for them despite the lack of an attorney-client relationship.  Thus, according to the district court, Bayer incurred a duty either (1) to inform the Lakens that he was not protecting their interests or (2) to exercise reasonable care to avoid misrepresentations to them.

We agree that Bayer owed the Lakens a duty of reasonable care to avoid making misrepresentations about the Fryer investments or to inform them that he was not protecting their interests.  "[W]hen a representation is made by professionals or those with greater access to information or having a special relationship to investors making use of the information, there is an obligation to disclose data indicating that the opinion or forecast may be doubtful."  Eisenberg, 766 F.2d at 776 (internal quote marks omitted); see also Kline v. First W. Gov't Secs., Inc., 24 F.3d 480, 490-91 (3d Cir. 1994) (recognizing "a limited duty to investigate and disclose when, by the drafter's omission, a public opinion could mislead third parties.").

Bayer argues that a duty arises under   552 of the Restatement (Second) only when there is privity between the plaintiff and the defendant or the defendant had a pecuniary interest in the transaction.  We assume, for purposes of argument, that Bayer's statement of the law is correct.  Given the amount of money involved, Bayer's one-third interest in commissions is a significant pecuniary interest.  Therefore, Bayer owed a duty to the Lakens.

Bayer next argues that he did not breach any duty of care applicable to him.  He claims that he used due care to avoid providing false information.  His argument relies heavily on disclaiming the district court's findings of fact.  However, Bayer does not point to evidence in the record showing the court's findings to be in error.  We are satisfied that the district court's findings have adequate support in the record and, thus, are not clearly erroneous.

Bayer also argues that negligent misrepresentation claims require expert testimony to establish a standard of care.  Bayer cites  Bortz v. Noon, 729 A.2d 555, 563 (Pa. 1999), for this proposition.  In Bortz, a plaintiff home buyer did not submit evidence sufficient to conclude that the standard of reasonable care for a real estate agent required the agent to investigate the accuracy of a title company's statement that the purchased home's septic system had passed a dye test.  The Lakens' claim against Bayer is not based on his failure to verify information received from a third party to the investment.  Bayer's situation is much more analogous to a realty agent who transfers information from seller to buyer and has a duty to verify the accuracy of the statements material to the transaction.  Bortz itself distinguishes this scenario from its holding.  Id.  We conclude that Bayer breached his

duty of reasonable care.

We also conclude that the Lakens justifiably relied on Bayer's misrepresentations. We agree with the district court that Bayer's professional status along with his involvement in Fryer's investment "opportunity," made Bayer appear reliable and on the lookout for the interests of the other investors. Bayer negligently misrepresented the investments he promoted and the Lakens believed him.

We also conclude that Bayer's negligent misrepresentation was the proximate cause of the Lakens' injury. The district court found that Bayer's negligent misrepresentation proximately caused the Lakens' injury, and Bayer does not cite evidence sufficient to overturn that finding as clear error.

We affirm the district court's determination that the Lakens have established negligent misrepresentation claims under Pennsylvania law.

### C. Contributory Negligence

The district court determined that the Lakens were not contributorily negligent. The same facts that support a finding of justifiable reliance also serve to defeat any argument that the Lakens' trust in the validity of the investments was negligent. The district court's finding that the Lakens were not contributorily negligent is not clear error.

### III. CONCLUSION

For the above reasons, we affirm the district court.

TO THE CLERK:

Please file the foregoing memorandum opinion.

/s/ Myron H. Bright

Circuit Judge