**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1234

_____

SARA ROSENBERG,
AS TRUSTEE OF DOUGLAS ROSENBERG 2004 TRUST,
Appellant

v.

PHL VARIABLE INSURANCE COMPANY; PHL DELAWARE, LLC; NASSAU
INSURANCE GROUP HOLDINGS, L.P.; NASSAU FINANCIAL GROUP, L.P.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-21-cv-02673)
District Judge: Honorable Karen S. Marston

_____

Argued January 17, 2024

Before: HARDIMAN, MATEY, and PHIPPS, *Circuit Judges*

(Filed: May 7, 2024)

_____

Michael Broadbent **[ARGUED]**
Arianna K. McLaughlin
Gabriella M. Scott
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103
        *Counsel for Appellant*

Jarrett E. Ganer **[ARGUED]**
Micah A. Grodin
Jay M. Patterson
McDowell Hetherington
1001 Fannin Street
Suite 2400
Houston, TX 77002
     *Counsel for Appellees*

---

OPINION[*]

---

MATEY, *Circuit Judge*.

Sara Rosenberg, as trustee for the Douglas Rosenberg 2004 Trust, appeals from the District Court's grant of summary judgment for Appellees PHL Variable Insurance Company, PHL Delaware, LLC, Nassau Insurance Group Holdings, L.P., and Nassau Financial Group, L.P. (collectively, PHL Variable).[1] Because we agree that PHL Variable was entitled to summary judgment on all claims, we will affirm.

## I.

This is a dispute between an insurer and its insured over a life insurance policy.

---

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Appellees PHL Delaware, LLC, Nassau Insurance Group Holdings, L.P., and Nassau Financial Group, L.P. "are holding companies that neither issued life insurance policies nor provided services or employees for PHL Variable." App. 4. Appellant did not "contest their dismissal" below, App. 4, and the District Court entered summary judgment for these entities. We address only the claims asserted against PHL Variable.

## A. The Trust Purchases a Term Life Policy from PHL Variable

In 2001, PHL Variable issued a $20 million term life insurance policy[2] on the life of Maury Lane Rosenberg, the insured. The policy was owned by the Douglas Rosenberg 2004 Trust (the Trust).[3] The Trust was created for the benefit of Douglas Rosenberg, the son of Maury Lane Rosenberg, the insured, and Sara Rosenberg, the sole trustee of the Trust and Appellant here.

The life insurance policy had a 32-year term and was set to expire in 2033. In addition to the benefit payable upon the insured's death, the policy also provided the right to convert it to "any whole life or any universal life insurance plan" that PHL Variable or its affiliate companies "offer[ed] at the time of conversion."[4] App. 197. This conversion right was only available for the first twenty years[5] that the policy was in effect—that is,

---

[2] In exchange for premiums, a term life insurance policy guarantees payment of a stated death benefit to the insured's beneficiaries if the insured dies during the term of the policy. *Life Insurance*, Black's Law Dictionary (11th ed. 2019). It is "not redeemable for a cash value during the insured's life." *Id*.

[3] *See also* App. 5 n.2 (describing ownership history of policy).

[4] The conversion could be accomplished "without evidence of insurability" to a "new [p]olicy on the life of the same insured under this [p]olicy but on a different plan of insurance." App. 197.

Unlike a term life insurance policy, both whole and universal life insurance policies are "permanent," meaning that they last for the life of the insured. Compared to universal life policies, whole life policies "are more rigid and provide more certainty because they require fixed, periodic premiums be paid in exchange for fixed benefits and guaranteed cash value accumulation." App. 6. Universal life policies, by contrast, are "more flexible but have less certainty because they allow the policyholder to vary the timing and amount of premiums and permit the insurer to periodically adjust the cost of insurance rates and credited interest rates that can impact the cash value accumulation and the amount of premiums needed to maintain coverage." App. 6.

[5] For the first twenty years that the policy was in effect, the annual premium was fixed at a rate of $68,675. The annual premium sharply increased in years 21 through 32, ranging from $2.1 to $5.9 million per year.

through 2021. During the relevant period, PHL Variable offered only one whole life policy—Remembrance Life—and one universal life policy—PAUL IV—for conversion.

## B. PHL Variable Stops Offering PAUL IV as a Conversion Option

In 2016, changes to the federal tax code and state regulations[6] impacted PHL Variable's ability to offer the PAUL IV universal life policy as a conversion option. As a result, PHL Variable decided it could no longer offer PAUL IV after January 1, 2020, and internal discussions in September 2019 focused on replacing it with Remembrance Life, the whole life policy.

By October 2019, PHL Variable began including a specific warning on conversion quotes for policyholders, including the Trust, that the "PAUL IV product will no longer be available after [December 31, 2019] as a conversion option product." App. 465. Additionally, call center representatives[7] were instructed to tell "clients about the

---

[6] The changes required that all life insurance contracts issued on or after January 1, 2020 be priced on the 2017 commissioners standard ordinary (CSO) mortality table. The CSO mortality table is used by life insurers to determine the probability that people of a certain age will die in any one year. The table is also used by life insurance companies to calculate reserve requirements—how much money must be held in reserve to pay future policy benefits based on the age of policyholders and their expected mortality.

The 2017 CSO mortality table was the first update since the 2001 CSO mortality table and reflected "significant improvement in the mortality rates." Am. Acad. of Actuaries & Soc'y of Actuaries, Report on the 2017 CSO and 2017 CSO Preferred Structure Table Development 3 (Oct. 2015), https://perma.cc/5448-FJ2G. The PAUL IV product offering—the universal life policy—was based on the 2001 CSO mortality table. As a result of these changes, PHL Variable determined that it did not have the "infrastructure needed to calculate" the new reserves required under the 2017 CSO mortality table for PAUL IV. App. 7.

[7] Call center representatives were not responsible for providing quotes to policyholders for potential conversions; rather, they recorded the requests and transmitted them to PHL Variable's conversion processing team, "which prepare[d] a written quote

4

upcoming changes," but were not themselves supposed to discuss the specifics of the new policy. App. 472. Then, beginning on January 1, 2020, PHL Variable discontinued PAUL IV and only offered a whole life policy, Remembrance Life, as a conversion option.

## C.     The Trust Converts Part of the Policy to PAUL IV

In late 2019, before the regulatory changes went into effect and before the policy's 2021 conversion deadline, the Trust began exploring conversion options. The Trust asked for, and received, conversion quotes three times.[8]

*First*, on November 15, 2019, PHL Variable provided the Trust with a quote to convert the entire $20 million term life policy to PAUL IV.[9] *Second*, on December 9, 2019, Douglas Rosenberg called PHL Variable to request a conversion quote for $10 million of the term life policy to PAUL IV, which was provided to him on December 11, 2019. *Third*, on December 12, 2019, the Trust's insurance agent also called to request a quote to convert $1 million and $5 million of the term life policy to PAUL IV. The insurance agent received the conversion quotes for the specified amounts on December 16, 2019. During an earlier call, the insurance agent had also been told that "PAUL may

and application for the policyowner's consideration." App. 9. Call center representatives were later instructed (on December 17, 2019, shortly before the January 1, 2020 deadline) they could tell policyholders that the "product for the Term Conversion will be Remembrance," which is a "whole life policy." App. 587.

[8] Recall that these quotes reflected that the "PAUL IV product will no longer be available after [December 31, 2019] as a conversion options product for this policy," App. 491, and that "[t]o convert this policy, all paperwork and payment requirements must be received in good order by [December 31, 2019]," App. 527.

[9] Before January 1, 2020, the Remembrance Life whole life product was only available as a conversion option for policies with a "face value of $100,000 or less." App. 908. But the policy here had a $20 million face value, so there was "no way to issue that . . . policy for Remembrance." App. 908.

5

not be available" as a conversion option. App. 854. The insurance agent memorialized this in an email to trustee Sara Rosenberg on December 10, 2019, saying that the conversion options were changing in 2020 and that the insurance agent perceived them to be less desirable because they would cost more. The insurance agent explained that she had "ordered [the Trust] current conversion quotes for $1 [million], $5 [million], and $10 [million] in case you want to convert part of your policy before the end of the year." App. 589.

Along with these recorded interactions, Douglas Rosenberg testified that he also "cold called" PHL Variable "multiple times" to ask about future pricing options, but was told by the call center representatives that they did not know "how expensive the future product would be" and he would have to contact the "higher ups" for that information. App. 743, 745, 748–49. Which he did not.

On December 24, 2019, the Trust converted $10 million of the $20 million of the policy to PAUL IV before it was discontinued on January 1, 2020.

## D. The Trust Explores Conversion Options After PAUL IV Is Discontinued

In 2020, the Trust continued to discuss conversion options with PHL Variable for the remaining $10 million on the policy. On January 14, 2020, PHL Variable sent the Trust a quote to convert $5 million of the remainder to Remembrance Life, the only conversion option now available. That quote reflected a significantly higher annual

premium.[10] Unhappy, Douglas Rosenberg called PHL Variable and asked whether PAUL IV was still available. PHL Variable told him it was too late, and that Remembrance Life was the only option now available. The Trust did not convert the rest of the policy. [11]

## E.    The Policy Lapses, and the Trust Sues

After the conversion date passed in May 2021, the policy's premiums increased in accordance with its original terms. The Trust did not pay the increased premiums, and the remaining $10 million of the policy lapsed in June 2021.

The Trust then sued PHL Variable for 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing, 3) fraudulent misrepresentation, and 4) negligent misrepresentation under Pennsylvania law, as well as for 5) violations of the Pennsylvania Unfair Trade Practices & Consumer Protection Law.[12] The Trust alleged that PHL Variable did not inform the Trust nor its policyholders that it would cease offering universal life policies, including PAUL IV, in 2020, and that it misrepresented to policyholders the availability of information about conversion options after January 1,

---

[10] The quote reflected an annual premium of $450,398—which was more than double the $197,334 annual premium quoted in December 2019 for conversion to PAUL IV. And significantly more than the policy's prior annual premiums of $68,675, but less than the expected future premiums on the term policy for years 21 through 32, which ranged from $2.1 to $5.9 million per year.

[11] In 2021, PHL Variable lowered the annual premiums for Remembrance Life. In May 2021, just three days before the policy's conversion deadline, PHL Variable sent the Trust quotes to convert $5 million and $10 million of the policy to Remembrance Life. But the Trust still did not convert the policy.

[12] The District Court had previously granted in part and denied in part PHL Variable's motion to dismiss. The claims listed here are those on appeal.

2020. After discovery, PHL Variable moved for summary judgment on all claims. The District Court granted the motion, and this appeal followed.[13]

## II.

We agree with the District Court that PHL Variable was entitled to summary judgment on all claims because the Trust failed to adduce the necessary evidence to maintain those claims.

### A.      PHL Variable Is Entitled to Summary Judgment on the Trust's Contract Claims

The Trust asserted two contract claims: express breach of contract and breach of implied duty of good faith and fair dealing. Summary judgment is appropriate as to both.

Under Pennsylvania law, the Trust can prove breach of contract by showing "(1) the existence of a contract, including its essential terms, (2) a breach of the contract[,]

---

[13] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment "de novo, applying the same standard the district court would use." *George E. Warren LLC v. Colonial Pipeline Co*, 50 F.4th 391, 395 n.7 (3d Cir. 2022). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[I]f the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (second and third alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

The contract provided that the Trust could "convert th[e] [p]olicy, without evidence of insurability, to a new [p]olicy on the life of the same insured under this [p]olicy but on a different plan of insurance." App. 152. According to the Trust, PHL Variable breached when it offered the Trust a conversion to a PAUL IV policy but not a Remembrance Life policy in 2019, and when it offered the Trust a Remembrance Life policy but not a PAUL IV policy in 2020. But neither amounts to a breach of contract.

As to the first alleged breach, recall that the Trust sought conversion quotes for a PAUL IV policy before that option was ceased to be offered on December 31, 2019. Those requested quotes ranged from $1 million up to the full policy amount of $20 million. But the Remembrance Life policy was only available as a conversion option for policies with a "face value of $100,000 or less," much less than the policy here. App. 908.[14] Thus Remembrance Life was not an available conversion option at the time the Trust requested conversion quotes in 2019, so there was no breach of contract in PHL Variable's failure to offer the Trust an unavailable conversion option.

As to the second alleged breach, the Trust offers no meaningful evidence that PAUL IV was available after January 1, 2020 and thus a viable option when the Trust requested conversion quotes in January 2020. There was thus no breach in not offering a policy that was unavailable due to regulatory changes.

---

[14] This amount was increased "in conjunction with the term coverage product." App. 908.

9

The Trust's breach of the implied duty of good faith and fair dealing claim fares no better. Though "[t]he law implies the duty of good faith into every insurance contract," *Berg v. Nationwide Mut. Ins. Co.*, 235 A.3d 1223, 1232 (Pa. 2020) (per curiam), the Trust cannot identify any bad faith[15] on the part of PHL Variable. Though the Trust was unhappy that PAUL IV was discontinued as a conversion option, PHL Variable did not have to continue offering it in light of the regulatory changes. PHL Variable informed the Trust of its plan to stop offering PAUL IV and the Trust understood the remaining conversion option (Remembrance Life) would be more expensive. Indeed, the Trust seized the opportunity, successfully converting $10 million of the policy to PAUL IV before the deadline. We see no bad faith here and agree with the District Court that summary judgment was warranted on the Trust's contract claims.

**B.      PHL Variable Is Entitled to Summary Judgment on the Trust's Tort Claims**

The Trust also asserted three tort claims: fraudulent misrepresentation, negligent misrepresentation, and violations of the Pennsylvania Unfair Trade Practices & Consumer Protection Law. Summary judgment is again appropriate for all.

Under Pennsylvania law, fraudulent misrepresentation requires the Trust to prove six elements: "1) a representation; 2) that is material to the transaction at issue; 3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false;

---

[15] Pennsylvania recognizes that an insurer's "subjective motive of self-interest or ill-will," while "not a necessary prerequisite to succeeding in a bad faith claim," can be "probative" as to whether "the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377, 369 (Pa. 2017) (citation omitted).

4) with the intent to mislead another person into relying on it; 5) justifiable reliance; and 6) an injury proximately caused by the reliance." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645–46 (Pa. 2021). For negligent misrepresentation, four elements are required: "1) a misrepresentation of a material fact; 2) made under circumstances in which the actor should have known of its falsity; 3) with an intent to induce another to act on it; 4) thereby causing injury to a party who justifiably relied upon the misrepresentation." *Id.*[16]

The Trust alleges it was fraudulent and negligent misrepresentation to say that conversion pricing and policy options were unavailable when the Trust contacted PHL Variable in 2019 and 2020. Specifically, Douglas Rosenberg testified that when he called PHL Variable multiple times—without identifying himself—to ask about the price of conversion options, he was told by call center representatives that they did not have that information, but that he needed to contact "higher ups" about that. App. 765. And the Trust's insurance agents testified that while they received vague information about conversion options from the call center representatives, they understood that those options were changing at the end of 2019.

We agree with the District Court that these are not misrepresentations. The call center representatives were not provided with specific information about the conversion options that would be available in 2020 until December 17, 2019, well after Douglas

---

[16] The difference between intentional and negligent misrepresentation is that for negligent misrepresentation, "the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words." *Gregg*, 245 A.3d at 646 (quoting *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999)).

Rosenberg and the Trust's insurance representatives contacted them. Indeed, PHL Variable adduced evidence that call center representatives were instructed *not* to "discuss available options, products, or timeframes" before December 17, 2019. App. 517, 587. Instead, they were supposed to "ask for the face amount the customer wants to convert" and "fax over the quote request to the customer service team." App. 517; App. 20 (internal quotation marks and alterations omitted). There is no evidence that these statements are false, or even misleading, so the misrepresentation claims should not survive summary judgment. *See Milliken v. Jacono*, 103 A.3d 806, 809 (Pa. 2014), *as modified on reconsideration* (Nov. 12, 2014) (granting summary judgment on misrepresentation claims where party opposing summary judgment could not identify any misrepresentation); *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (finding no misrepresentation where agent did not give reports and information to a buyer when the agent herself did not have the reports and information).

But even putting falsity aside, the Trust's claims would still fail. Both fraudulent and negligent misrepresentation claims require the Trust to show that it "justifiably relied" upon the misrepresentation. *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 135 (3d Cir. 2005).[17] Here, the Trust received repeated warnings that PAUL IV would not be available as a conversion option beginning in 2020. Guidance the Trust followed by

---

[17] Whether reliance is justifiable depends on "the relationship of the parties involved and the nature of the transaction." *Tran*, 408 F.3d at 135 (quoting *Rempel v. Nationwide Life Ins. Co.*, 370 A.2d 366, 368 (Pa. 1977)). Pennsylvania law recognizes that "[i]t is . . . not unreasonable for consumers to rely on the representations of" insurance companies because they "possess[] expertise in a complicated subject." *Rempel*, 370 A.2d at 368.

converting a large chunk of its policy to PAUL IV before the deadline. All making any reliance on the allegedly vague statements of the call center representatives unreasonable. *Cf. Dilworth v. Metro. Life Ins. Co.*, 418 F.3d 345, 354 n.16 (3d Cir. 2005) (discussing how an insured's claims should not survive summary judgment against an insurer based on "naked allegations" that the insured justifiably relied on the insurer's statements).

Finally, the Trust asserted a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law's catchall provision, 73 Pa. Stat. and Cons. Stat. Ann. § 201-2(4)(xxi) (West). That provision requires proof that the defendant engaged in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," or which "has the tendency or capacity to deceive." *Gregg*, 245 A.3d at 647, 649 (citation omitted). The Pennsylvania Supreme Court has recently held that such a claim also requires proof that the plaintiff "relie[d] to his or her financial detriment." *Id*. at 649–50.

The Trust's claim can thus be rejected for similar reasons as its misrepresentation claims. *First*, the Trust cannot point to any conduct or statements that "create[d] a likelihood of confusion or of misunderstanding," *id*. at 650 (citation omitted)—rather, the Trust received correct information from PHL Variable regarding the Trust's conversion options and the corresponding deadlines. *Second*, the Trust has shown no indication it relied to its financial detriment upon PHL Variable's allegedly fraudulent or deceptive conduct, particularly when the Trust successfully converted $10 million of the policy.

We therefore agree with the District Court that summary judgment was warranted on the Trust's tort claims.

13

\* \* \*

For these reasons, we will affirm.