Nunn v. Massachusetts

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: August 21, 2013     Decided: May 15, 2014)

Docket No. 12-3712-cv
_____

RONALD NUNN AND DONALD VADEN,

*Plaintiffs-Appellants*,

−v.−

MASSACHUSETTS CASUALTY INSURANCE COMPANY, NKA CENTRE LIFE
INSURANCE COMPANY,

*Defendant-Appellee*,

SUN LIFE ASSURANCE COMPANY OF CANADA,

*Defendant*.

_____

Before:
        LEVAL, WESLEY, AND HALL, *Circuit Judges*.

Defendant-Appellee, Massachusetts Casualty Insurance Company ("MCIC"), petitions for rehearing following our decision in *Nunn v. Massachusetts Casualty Insurance Co.*, 743 F.3d 365 (2d Cir. 2014). The petition is granted, and the opinion filed February 24, 2014 is withdrawn. For the reasons that follow in our revised opinion, the district court's order and judgment dismissing Plaintiffs' complaint is VACATED and the case is REMANDED to the district court for further proceedings in accord with this opinion.

───────────

DAVID M. BERNARD, Koskoff Koskoff & Bieder, P.C., Bridgeport, CT, *for Plaintiffs-Appellants*.

PATRICK M. FAHEY, (Mark K. Ostrowski, *on the brief*), Shipman & Goodwin LLP, Hartford, CT, *for Defendant-Appellee*.

───────────

WESLEY, *Circuit Judge*:

Defendant-Appellee, Massachusetts Casualty Insurance Company ("MCIC"), petitions for rehearing following our decision in *Nunn v. Massachusetts Casualty Insurance Co.*, 743 F.3d 365 (2d Cir. 2014). The petition is granted, and the opinion filed February 24, 2014 is withdrawn. For the reasons that follow in our revised opinion, the district court's order and judgment dismissing Plaintiffs' complaint is VACATED and the case is REMANDED to the district court for further proceedings in accord with this opinion.

Plaintiffs-Appellants appeal from a September 10, 2012 order of the United States District Court for the District of Connecticut (Arterton, *J.*) granting Defendant's motion for summary judgment. The district court erred in failing to correctly apply Pennsylvania's reasonable expectations doctrine to Plaintiffs' reformation claims and in finding the breach of contract claims to be time-barred. We therefore VACATE and REMAND in accord with the following.

**BACKGROUND**

Ronald Nunn and Donald Vaden are former National Basketball Association ("NBA") referees. In September 1996, Plaintiffs participated in a referee training camp in New Jersey and attended a union meeting hosted by the National Basketball Referees Association (the "NBRA"). At the meeting, Steven Lucas, a sales representative for Sun Life of Canada, the company MCIC had designated as its administrator for disability income products, gave a presentation about supplemental disability insurance offered by MCIC. Sun Life authorized Lucas to solicit applications for MCIC's insurance policies. He was introduced as a "disability expert" with seventeen years' experience. During the presentation, Lucas described a supplemental disability policy he had

3

implemented for umpires with Major League Baseball. Lucas also explained to Plaintiffs that their current insurance coverage might be insufficient if they became unable to work, but that he could offer supplemental disability insurance that "changes the taxable benefit to a tax free benefit. It changes the benefit period from 10 years to age 65. It covers you in your own occupation. If you can't do your job you're disabled." (Transcript of Fall NBRA Presentation at 8, Sept. 29, 1996). Lucas detailed how the supplemental insurance worked, specifically describing the "own occupation" aspect of the arrangement:

> this program is a function of you being covered in your occupation at the time disability starts. If you can't be an official but you can work in a store some place you go ahead and work there. I mean, *you are totally disabled from being an NBA official* that is what the disability is based on.

(*Id.* at 33) (emphasis added). He stressed repeatedly that one of the supplemental insurance's key advantages was that it covered policy-holders unable to perform their "own occupation"— here, NBA referee — until they were sixty-five years old, regardless of the extent of disability. Lucas reiterated this point numerous times and further explained that while their current disability policy only paid benefits for ten years after disability, his company's policy would make monthly payments to age sixty-five no matter when the insured became disabled. (*Id.* at

4

10).  Again and again he counseled the gathered referees that "[t]hey are all still going to collect the [monthly payments] through the age of 65[;]" the "fact that it is issued to age 65 it guarantees you that the supplement is truly that because it is tax free[;]" "[t]he program covers you to 65 as I mentioned before[;]" and "[t]he policy is guaranteed to you to age 65."  (*Id.* at 11, 12, and 14).

Within weeks of his presentation, Lucas sent each Plaintiff an application for supplemental coverage.  Each completed the application with Lucas' assistance over the phone.  Within a few days of each other, Plaintiffs submitted applications through Lucas for the supplemental disability insurance policy he had described.  Lucas signed both.  Neither Plaintiff read the description of coverage prior to submitting their respective application.  Plaintiffs received their copies of MCIC's supplemental disability insurance policy, but again neither read the policy.[1]  Had they examined their policies, Plaintiffs would have discovered that the policies' definition of "total disability" was at odds with  Lucas' description.  Though the definition for "total disability" in the policies began as Lucas had promised — providing coverage when the insured could not work in

[1]The policy includes a "Notice of 10-Day Right to Examine this Policy" clause stipulating that Plaintiffs could return the policy if they were "not satisfied for any reason" within 10 days of receiving it.  (Nunn and Vaden Dis. Inc. Policy at Cover).

his or her occupation — that definition changed after 60 months of paid benefits. The policy states that after 60 months, "[total disability] shall then mean the Insured's substantial inability to perform the material duties of *any gainful occupation* for which he/she is suited. . . ." (Nunn and Vaden Dis. Inc. Policy at 3) (emphasis added).

During his deposition, Lucas agreed that "the terms of the policy as [he] described them were not consistent with the terms of the policies that were sold to the NBA referees[.]" (Lucas Dep. at 12-13). He admitted that the policies' "own-occupation period of the definition of disability" was "inconsistent" with the terms described in his presentation. (*Id*. at 17). He did not tell the NBRA members that the policy he described was not actually available to them. (*Id*. at 74-75).

In 2002, Nunn suffered a knee injury that ended his career as an NBA referee. The next year, Vaden also suffered a career ending injury. Each began receiving monthly payments pursuant to their supplemental insurance policies; but after sixty months — Nunn was fifty-eight and Vaden fifty-five — the payments stopped. Because both Plaintiffs were able to work at other jobs — in

fact, both continued working for the NBA in other capacities — MCIC ceased payment.

Both Plaintiffs claim that based on Lucas' presentation, they expected to receive payments until age sixty-five. Vaden explained that he did not read the policy because "[he] really went by what [Lucas] told [him] because [he] trusted [Lucas]." (Vaden Dep. at 37). "[Lucas] was convincing, and then the union as a whole was excited about it, so I trusted him." (*Id.* at 60). Nunn similarly explained that "[he] didn't feel there was a need [to read the policy]. It was pretty clear how [he] understood Mr. Lucas's presentation." (Nunn Dep. at 27).

In August 2010, Plaintiffs filed suit in the United States District Court for the District of Connecticut, alleging breach of contract and/or seeking reformation with respect to each policy. MCIC moved for summary judgment, asserting that Plaintiffs' claims were barred by Connecticut's six-year statute of limitations, and that the insurance policies contained unambiguous language limiting Plaintiffs to sixty months of supplemental disability insurance payments if they were able to perform any gainful occupation thereafter.[2] The district court (Arterton, *J.*) granted MCIC's motion for summary judgment.

---

[2] Plaintiffs did not cross-move for summary judgment.

The court concluded that Plaintiffs were not entitled to reformation. In reaching this decision, the district court found that Pennsylvania law governed the substance of the contract. The court explained that under Pennsylvania law, courts generally give effect to the plain language of a contract, but if "the insurer [] either unreasonably obscure[d] the terms or outright deceive[d] the insured," Pennsylvania law requires courts to interpret contracts based on the "reasonable expectations" of the insured. *Nunn v. Massachusetts Cas. Ins. Co.*, 3:10CV1350 JBA, 2012 WL 3985162, at *8 (D. Conn. Sept. 10, 2012) (internal quotation marks omitted). Because Plaintiffs had alleged neither fraud nor misrepresentation — which the court understood as prerequisites to the reasonable expectations doctrine — the court concluded that it must apply Pennsylvania's general rule and look to the contract's plain meaning without regard for Plaintiffs' reasonable expectations.[3]

The court also determined, and the parties do not dispute, that Connecticut law supplies the statute of limitations period for Plaintiffs' breach of contract

---

[3]The court denied MCIC's motion to dismiss the reformation claim for laches but then concluded that even if the reasonable expectations doctrine applied, contract reformation would be improper because it "is an equitable remedy that is sparingly applied, and here, there has been extreme delay in filing suit . . . ." *Nunn*, 2012 WL 3985162, at *9.

claims. Based on Connecticut's six-year period, the court concluded the claims were time-barred because the breach occurred in 1996, the date the policies were issued — not in 2008 or 2009, when MCIC ceased making payments and Plaintiffs became aware of the limits of their policies.

# DISCUSSION[4]

While Connecticut is the forum state, both parties agree that Pennsylvania is the "contract state," and thus Pennsylvania's law applies to "matters of substance." In ascertaining the substantive law of the forum, federal courts will look to the decisional law of the forum state, as well as to the state's constitution and statutes. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Pennsylvania law is somewhat unique in that it employs the reasonable expectations of the insured in some situations to govern contract interpretation.

---

[4]We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor. *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Summary judgment is appropriate where the record reveals that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*Gilderman v. State Farm Ins. Co.*, 437 Pa. Super. 217, 224 (1994).  As in other jurisdictions, the default rule in Pennsylvania is to allow "the language of an insurance policy [to] provide the best indication of the content of the parties' reasonable expectations."  *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994).  But unlike most jurisdictions, which will not look beyond the four corners of an unambiguous writing, Pennsylvania law instructs that we examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the consumer."  *Dibble v. Sec. of Am. Life Ins. Co.*, 404 Pa. Super. 205, 210 (1991).  Thus, even a clear and unambiguous writing will not bind the insured where the insurer or its agent gives the insured a reasonable expectation that coverage is different than that stated in the written policy.  *See Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 455-56 (1987).  Under Pennsylvania law when an insurer's agent makes a representation with regard to coverage which is inconsistent with the later delivered policy, that inconsistency creates an ambiguity in that regard notwithstanding the clarity of the policy's provisions and may entitle the insured to rely on the agent's representation.  *See id.* at 455.

The Third Circuit surveyed the Pennsylvania Supreme Court's decisions on the doctrine of reasonable expectations eight years ago in *Tran v. Metropolitan Life Insurance Co.*, 408 F.3d 130, 136 (3d Cir. 2005). *Tran* reviewed three cases that provide a roadmap of Pennsylvania's reasonable expectations doctrine: *Rempel v. Nationwide Life Insurance Co.*, 471 Pa. 404 (1977); *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300 (1983), and *Tonkovic v. State Farm Mutual Automobile Insuranc Co.*, 513 Pa. 445 (1987). In *Rempel*, the insured received a verbal confirmation from an agent that the insurance company would match a competitor's offer for life insurance, but signed a contract inconsistent with that commitment. Following the insured's death, the beneficiary sought to collect on the policy as promised by the agent and not surprisingly, the company denied coverage. The Pennsylvania Supreme Court acknowledged that insureds make the purchase decision at the time they apply and "[b]y the time the written policy is received, it has lost its importance to the insured. . . . It is not unreasonable . . . for a purchaser of insurance to 'pass' when the time comes to read the policy." *Rempel*, 471 Pa. at 410 (citation omitted).

In *Standard Venetian,* the insured purchased a general liability policy for his company, Venetian. The policy covered personal injury or property damage

11

caused by Venetian, but excluded coverage for property damage to Venetian's products caused by its employees or by the products themselves. *Standard Venetian*, 503 Pa. at 303. Four years after installation, one of Venetian's porticos collapsed following a snow storm, destroying the portico and some property of the portico's owner. When the owner sued Venetian, the company sought indemnification from its carrier for the cost of the owner's property damage and the cost of the portico. The carrier brought a declaratory judgment action asking the court to find that while it was liable for the cost of the damage to the owner's property stored under the portico, the plain terms of the policy excluded coverage for the cost of the portico. One of Venetian's principals testified in a deposition that he had asked the insurance agent to procure a policy the provided "full coverage on everything we have," *id.* at 304, but the poor fellow never read the policy when it was delivered to Venetian.

Venetian argued that because the exclusion had never been noted or explained to its principals the exclusion could not be enforced against it. *Id.* at 305-06. The Pennsylvania high court was not impressed. The court found that the exclusion was clear and unambiguous and therefore had to be enforced as written. *Id.* at 307. Unlike the insured in *Rempel*, Venetian never asked for or

12

received a specific representation that the policy would cover damage to its products. Venetian's principals simply *assumed* that the *general* liability policy would cover that category of property damage. Lacking an affirmative misrepresentation, the Pennsylvania Supreme Court concluded that reformation was unjustified. *Compare Standard Venetian*, 503 Pa. at 306-07, *with Rempel*, 471 Pa. at 410-11. Some might have been tempted to view *Standard Venetian* as a signal that the state high court was stepping back from the reasonable expectations doctrine, but this was not to be the case.

Four years later in *Tonkovic*, the Pennsylvania Supreme Court put an end to that temptation. In *Tonkovic*, the insured had specifically requested a disability policy that would pay his home mortgage if he became disabled as a result of an accident for which he would also receive workers' compensation. His insurance agent — aware of this expectation — made no effort to disabuse the insured that his policy would not coincide with the coverage requested. *Tonkovic*, 513 Pa. at 447-48. When the insured was injured at work and received worker's compensation benefits, the insurance company promptly rejected his claim. *Id*. at 448. The court explained why *Rempel* and not *Standard Venetian* dictated the result. The court noted

13

a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested [as in *Rempel*], and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for [as in *Standard Venetian*]. When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a  duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

*Id.* at 454.  In reviewing these three cases, the Third Circuit found that

one theme emerges . . . courts are to be chary about allowing insurance companies to abuse their position vis-à-vis their customers.  Thus we are confident that where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy[,] that expectation will prevail over the language of the policy.

*Tran*, 408 F.3d at 136 (citing *Bensalem*, 38 F.3d at 1311) (alteration in original).

These cases reveal that reasonable expectations cases fall into two camps. In one, "where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested," the insured's expectations are reasonable and therefore govern the contract.  *West v. Lincoln Ben. Life Co.*, 509 F.3d 160, 168 (3d Cir. 2007) (internal citations and quotation marks omitted).  In the other, where "the

14

insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for," any other expectations are simply unreasonable. *Id*. at 168 (internal citations and quotation marks omitted).

Plaintiffs' claims fall within the first camp. Plaintiffs have put forth sufficient evidence to create a material issue of fact as to whether Nunn and Vaden reasonably expected that the policies would provide coverage through age 65 as long as they were disabled from performing as referees, based on Lucas' representations. Vaden and Nunn contend they never read their policies, instead assuming that each reiterated the terms Lucas had previously described to them. When they were subsequently injured and unable to work as NBA referees, they argue that, as Lucas had allegedly promised, they should have received payments until age sixty-five.

An insured's failure to read the policy does not defeat his reasonable expectations. As the Supreme Court of Pennsylvania explained in *Tonkovic*, "[w]hen the insurer elects to issue a policy differing from what the insured requested and paid for. . . . [t]he burden is *not* on the insured to read the policy to discover such changes, or not read it at his peril." 513 Pa. at 454 (emphasis

15

added). Pennsylvania law recognizes that "[c]onsumers . . . view an insurance agent . . . as one possessing expertise in a complicated subject[, and i]t is therefore not unreasonable for consumers to rely on the representations of the expert rather than on the contents of the insurance policy itself." *Rempel*, 471 Pa. at 409. Indeed, "the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent." *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 594 (1978). Defendant has not shown as a matter of law that, under the circumstances in this case, "it [was] unreasonable [for Plaintiffs] not to read [the policy]." *See Tonkovic*, 513 Pa. at 452 (quoting *Rempel*, 471 Pa. at 411). Under Pennsylvania law, Vaden and Nunn may be entitled to reformation of their policies if their asserted expectations were reasonable.

Contrary to the holding of the district court, nothing in Pennsylvania precedent suggests that Plaintiffs must assert claims of fraud or misrepresentation before the reasonable expectations of the insured can be considered— in fact, it suggests the opposite. In *Tonkovic*, the Supreme Court of Pennsylvania applied the reasonable expectations doctrine and found for the insured even though the insured "did not set forth a separate cause of action . . . for negligent misrepresentation." 513 Pa. at 460 (Zappala, J., dissenting)

16

(emphasis added). Similarly, in *Rempel*, although the insured's claim was formally a claim of negligent misrepresentation, the Court noted that the insured more simply "sought recovery on the basis of the policy as it should have been written," and permitted recovery based on the insured's reasonable expectations. 471 Pa. at 413. In short, Plaintiffs' failure to plead negligent misrepresentation or fraud does not prohibit the court from looking past the plain language of their written policies.

Therefore, the district court erred in granting summary judgment to MCIC on Plaintiffs' reformation claims. Pennsylvania's "reasonable expectations" doctrine as set out above governs Plaintiffs' claims for the reformation of the contracts, which the district court held are not barred by laches.[5]

Nonetheless, MCIC presses that Plaintiffs' attempt to enforce the contract is untimely. Its argument is premised on a strained understanding of the relationship between a procedural matter — the applicable state statute of limitations — and the substantive policies inherent in Pennsylvania contract law.

---

[5] The district court correctly decided that MCIC had failed on the current record to show any prejudice from any delay in Plaintiffs' bringing their claims for reformation. However, the court later concluded that Plaintiffs' reformation claims failed because "there ha[d] been extreme delay in filing suit . . . ." *Nunn*, 2012 WL 3985162, at *9. A claim may not be dismissed for delay unless it was filed after the expiration of the limitation period or it was filed under circumstances constituting laches. Delay alone does not entitle MCIC to dismissal.

17

Plaintiffs concede in their brief that Connecticut law controls the statute of limitations — six years — on their breach of contract claims. *See* Connecticut General Statutes § 52-576(a). Connecticut, however, does not follow Pennsylvania's version of the reasonable expectations doctrine. MCIC argues that under Connecticut law, Plaintiffs' breach of contract claims accrued when Plaintiffs received insurance policies that did not conform with Lucas' alleged promises. *See Tolbert v. Conn. Gen. Life Ins. Co.*, 257 Conn. 118, 125-26 (2001).

But the parties and the district court agree that Pennsylvania substantive law defined the contract's interpretation and the parties' obligations thereunder; Pennsylvania is the contract state. Pennsylvania law determines whether Plaintiffs are entitled to reformation; whether they were absolved under the circumstances from reading the policy at delivery; and whether the contract is to be interpreted (or recast) in a manner consistent with Plaintiffs' expectations of coverage.

The substantive law of Pennsylvania controls how to interpret the contract — and reform it when necessary — and how to determine the nature and scope of the contractual rights and obligations in play; it is the last word in this case. Though Connecticut law decides the length of the limitations period, if Plaintiffs

18

prevail in showing entitlement to reformation, it would eviscerate the very heart of Pennsylvania's reasonable expectations doctrine to give force to Connecticut law as to when the claim accrued. It would be a hollow victory indeed for Plaintiffs to succeed on their claim that the contract as written is not the contract to which they are entitled only to be told that the delivery of the contract as written should have triggered their breach of contract claims notwithstanding that Pennsylvania law absolved them from reading the versions delivered. If Plaintiffs demonstrate entitlement to reformation of their contracts under Pennsylvania law, the terms of the reformed contracts will determine when any breach of contract occurred. Thus, if under Pennsylvania law Plaintiffs are entitled to reformation of the contract so as to give Plaintiffs benefits through age 65, then MCIC's breach would not have occurred until MCIC ceased paying benefits after passage of 60 months. The district court's decision dismissing Plaintiffs' breach of contract claims is therefore vacated.[6]

---

[6]MCIC also asserted in its motion for summary judgment at the district court that it is not accountable as a matter of Pennsylvania law for Lucas' representations, which are the subject of this lawsuit. The issue remains open on remand.

19

The district court's order and judgment dismissing Plaintiffs' complaints is VACATED with costs, and the matter is REMANDED to the district court for further proceedings in accord with this decision.