# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

<table>
<tr><td>SS&C TECHNOLOGIES HOLDINGS, INC.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>C.A. No. N20C-01-088 EMD CCLD</td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>ENDURANCE ASSURANCE</td><td>)</td><td></td></tr>
<tr><td>CORPORATION,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)</td><td></td></tr>
</table>

Submitted:  August 4, 2020
Decided: October 29, 2020

*Upon Defendant's Motion to Dismiss or Stay this Action*
***DENIED***

*Upon Plaintiff's Motion for Partial Summary Judgement*
***GRANTED in part and DEFERRED in part***

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Robin L. Cohen, Esquire, James H. Smith, Esquire, McKool Smith, P.C., New York, New York. *Attorneys for Plaintiff SS&C Technologies Holdings, Inc.*

Marc S. Casarino, Esquire, White and Williams LLP, Wilmington, Delaware, Kimberly M. Melvin, Esquire, John E. Howell, Esquire, Matthew W. Beato, Wiley Rein LLP, Washington, D.C. *Attorneys for Defendant Endurance Assurance Corporation.*

**DAVIS, J.**

## I.    INTRODUCTION

This insurance coverage dispute is assigned to the Complex Commercial Litigation Division of the Court.  On January 10, 2020, Plaintiff SS&C Technologies Holdings, Inc. ("SS&C") filed suit against Defendant Endurance Assurance Corporation ("Endurance") for breach of an insurance policy, the Premier Professional Liability and Network Risk Insurance Policy (the "Policy") issued by Endurance to SS&C.  SS&C's complaint (the "Complaint")[1]

---

[1] D.I. No 1.

asserts two causes of action: (i) breached the terms of the Policy ("Count I"); and (ii) breached its implied covenant of good faith and fair dealing ("Count II"). Endurance defends on the basis that the liability at issue arose from unfair trade practices and the return of fees which are excepted from indemnification under the Policy.

SS&C filed a Motion for Partial Summary Judgment (the "Summary Judgment Motion").[2] Thereafter, Endurance filed a Motion to Dismiss or Stay this Action (the "Motion to Dismiss").[3] The parties fully briefed the motions. The Court held a hearing on the Motion to Dismiss and the Summary Judgment Motion on July 7, 2020.[4] After the hearing, the Court took the motions under advisement. On July 30, 2020, Endurance's counsel provided the Court with an update on the Connecticut Action (as defined below).[5] On August 4, 2020, SS&C's counsel advised the Court of the status of the Declaratory Judgment Action.[6]

For the reasons set forth below, the Court will **DENY** the Motion to Dismiss. On the Summary Judgment Motion, the Court will **GRANT** in part and **DEFER** in part the relief sought.

## II.     RELEVANT FACTS[7]

### A.  THE POLICY

SS&C is a financial services company that offers software and software-enabled services to its clients, most of whom operate in the financial sector.[8] SS&C maintains an insurance

---

[2] D.I. No. 6,
[3] D.I. No. 9.
[4] D.I. No. 28.
[5] D.I. No. 30.
[6] D.I. No. 31.
[7] Unless otherwise indicated, the following are the Relevant Facts as stated in SS&C's Complaint. For purposes of the Motion to Dismiss, the Court must view all well-pleaded facts alleged in SS&C's Complaint as true and in a light most favorable to SS&C. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, C.A. No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010). The Court will consider the affidavits filed in connection with the Summary Judgment Motion.
[8] Compl. ¶ 2.

program to protect against potential losses. The Policy at issue was issued by Endurance to SS&C for the "Policy Period" from April 30, 2017 to April 30, 2018.[9] The Policy's "Limit of Liability" for Professional Services, Technology and Media Liability is $10,000,000, subject to a $1,300,000 retention.[10]

The Policy provides:[11]

If Insuring Agreement A. is purchased as designated in Item 4. of the Declarations, the Insurer shall pay Damages and Claim Expenses resulting from any Claim first made against the Insured during the Policy Period and reported to the Insurer in writing during the Policy Period, or any applicable Extended Reporting Period, for any Professional Services Wrongful Act, Technology Wrongful Act or Media Wrongful Act committed on or after the Retroactive Date and before the Policy terminates.[12]

The Policy defines "Claim" "to include lawsuits that allege "Wrongful Act[s]."[13] "Wrongful Act" encompasses a "Technology Wrongful Act," which means:

any act, error, omission, misstatement, misleading statement, neglect, breach of duty, or Unintentional Breach of Contract actually or allegedly committed or attempted by an Insured in connection with the Insured's rendering of or failure to render Technology Services or Telecommunication Services to others, or the failure of the Insured's Technology Products to perform the function or serve the purpose for which they are intended.[14]

"Technology Services" is defined as "any electronic or computer-based network services."[15]

"Technology Products" means "computer or telecommunications hardware, software, firmware, or related electronic equipment, including the design, development, manufacturing, assembly, distribution, licensing, leasing, sale, installation, repair or maintenance thereof."[16]

---

[9] Motion at 3.
[10] *Id*. at 3-4.
[11] Compl., Ex. A at § I(A). A copy of the Policy, including the Professional Services, Technology and Media Liability Coverage Section, is attached to the Complaint as Exhibit A. (hereafter, "Policy at § __.")
[12] *Id.* Unless necessary, the Court is not including the emphasis contained in the Policy.
[13] *Id*. at §II(D)(1).
[14] *Id*. at §II(F).
[15] *Id*. at §II(LL).
[16] *Id*. at §II(KK).

The Policy defines "Damages" as: (i) compensatory sums; (ii) monetary judgments or settlements; (iii) "punitive or exemplary damages or the multiple portion of any multiplied damage award, to the extent such damages are insurable under the law most favorable to the insurability of such damages of any jurisdiction which has a substantial relationship to [SS&C], [Endurance], this Policy, or the Claim;" and pre-judgment and post-judgment interest.[17] Damages do not include "the return, reduction or restitution of fees, commissions, royalties, expenses or costs for Professional Services or Technology Services performed or to be performed by the Insured"[18] which the parties refer to as the "Fees Carve-Out."[19]

Section II, Item H, as amended by Endorsement Number 14, also limits indemnification. First, the Policy does not cover the "return, reduction or restitution of fees, commissions, royalties, expenses or costs for Professional Services or Technology Services performed or to be performed by the Insured."[20] The Policy also does not cover "matters uninsurable under the law pursuant to which this Policy is construed…."[21] Section III(K) of the Policy contains an exclusion for "'any Damages or Claims Expense based upon, arising out of, attributable to or involving directly or indirectly . . . any actual or alleged false, descriptive or unfair business practices or any violation of consumer protection laws.'"[22]

## B. THE *ARMOUR* ACTION

In May of 2014, SS&C began negotiating with ARMOUR Capital Management LP ("ACM") to provide and to install SS&C's CAMRA software as a comprehensive solution for managing ACM's client's mortgage-related securities portfolios. SS&C and ACM entered into a

---

[17] *Id*.
[18] *Id*.
[19] *See, e.g.,* Response at 8.
[20] Policy at §II, Item H., as amended by Endorsement No. 14.
[21] *Id.*
[22] *Id*. at §III(K).

services agreement in December 2014. Under this agreement, SS&C licensed its software to ACM. In addition, ACM hired SS&C to implement the software for ACM. SS&C encountered multiple issues throughout the course of installation, which delayed the process.

In May 2017, ACM terminated the agreement and brought suit (the "*Armour* Action") against SS&C in the United States District Court for the District of Connecticut New Haven Division.[23] In the *Armour* Action, ACM alleged that SS&C: (i) breached the agreement: (ii) intentionally and/or negligently misrepresented SS&C's ability to implement the CAMRA software in order to induce ACM to enter into the agreement; and (iii) negligently and/or negligently misrepresented SS&C's progress and ability to implement CAMRA in order to induce ACM into releasing payments to SS&C and not terminating the agreement sooner. ACM also argued that SS&C violated the Connecticut Unfair Trade Practices Act ("CUPTA").

On January 6, 2020, ACM and SS&C settled (the "Settlement") the *Armour* Action after two years of litigation. The terms of the Settlement are confidential. The parties dispute whether Endurance had an opportunity to be fully involved in the Settlement.

SS&C contends that the Policy is designed to protect SS&C against the type of loss incurred as a result of the CAMRA implementation issues and the *Armour* Action. Endurance did advance defense costs related to the *Armour* Action but refuses to indemnify SS&C in connection with the *Armour* Action settlement. According to the Complaint, Endurance refused to indemnify/contribute to the settlement by relying on various provisions in the Policy. SS&C contends that all the provisions are inapplicable under the plain meaning of the Policy and the "court's orders in the *Armour* Action."[24] In the Motion to Dismiss, Endurance states that the

---

[23] The case, as filed in Connecticut, was: *Armour Capital Management LP v. SS&C Technologies Inc., No. 3:17-cv-00790-JAM* (D.Conn.)
[24] Compl. at ¶ 7.

5

Policy does not cover "the return, reduction or restitution of fees, commissions, royalties, expenses or costs for Professional Services of Technology Services performed or to be performed by the Insured."[25]

### C. PROCEDURAL HISTORY

On January 9, 2020, Endurance filed an action against SS&C in the Connecticut Superior Court, seeking a declaration on the extent of the Policy's coverage (the "Connecticut Action").[26] On January 10, 2020, SS&C filed the Complaint. As stated above, the Complaints sets out two claims for relief. Unfortunately, the pattern of dueling litigations has once again been presented to the Court. As always, there is no indication that either the Connecticut Superior Court or this Court is not capable of readily adjudicating the litigation.

SS&C filed its Motion for Partial Summary Judgment on February 7, 2020. On April 8, 2020, Endurance filed its Answering Brief in Opposition to SS&C's Motion for Partial Summary Judgment. Endurance filed its Motion to Dismiss on March 4, 2020. On April 8, 2020, SS&C filed its Answering Brief in Opposition to Endurance's Motion to Dismiss or Stay the Action (the "Opposition").

### III. PARTIES' CONTENTIONS

### A. MOTION TO DISMISS

Endurance requests that the Court either dismiss or stay this case on the following grounds: (1) the *Cryo-Maid forum non conveniens* principle or (2) the *McWane* "first to file" doctrine. Endurance argues that *Cryo-Maid* applies because: (1) a formerly filed Connecticut action is pending, (2) the witnesses, documentary evidence, and previous *Armour* Action were,

---

[25] Ex. A, Section II, Item H., Part 2, as amended by Endorsement No. 14. (All emphasized terms appear in boldface in the Policy).

[26] This fact is taken from page 6 of Endurance's Opening Brief in Support of its Motion to Dismiss or Stay the Action.

or have been mainly, located in Connecticut, (3) Connecticut law is controlling in interpreting the Policy because SS&C's principal place of business is in Connecticut, (4) the dispute falls under Connecticut contract and consumer protection law, and (5) the case will demand a judicial determination of Connecticut public policy.

In the alternative, regarding the *McWane* analysis, Endurance asserts its applicability by stating that: (1) the Connecticut Action was filed first, (2) the Connecticut Superior Court is capable of ensuring prompt and complete justice, and (3) both actions (Connecticut and Delaware) largely include the same parties and issues. Further, Endurance contends that the case has "no meaningful connection to Delaware."[27]

SS&C opposes the Motion to Dismiss. SS&C argues that "dismissal is only appropriate under the doctrine of *forum non conveniens* where the defendant can show 'overwhelming hardship and inconvenience if required to litigate in Delaware.'"[28] SS&C contends that Endurance cannot possibly meet that standard. SS&C also claims that Delaware law and not the law of Connecticut governs the matter as Delaware law is applied in a Delaware court when there is no conflict between two state's laws. In addition, SS&C argues that the matter of whether punitive damages are insurable under the law has already been determined under Connecticut law, so there is no required public policy analysis. SS&C notes that because it is the insured, it is the natural plaintiff, and as such, it is "entitled to its day in Court in the forum of its choosing."[29] Lastly, SS&C contends that Endurance's *McWane* analysis fails under Delaware law, which views actions filed within the same general time period as contemporaneous.

---

[27] Def.'s Br. 1.
[28] Pl.'s Br. 2.
[29] *Id.*

7

## B. SUMMARY JUDGEMENT MOTION

SS&C moves for summary judgment as to its breach of contract claim because Endurance breached the terms of the Policy.[30] Specifically, SS&C asserts that the damages sought by ACM in the *Armour* Action do not constitute a "Return of Fees,"[31] the fees carve out does not apply,[32] and "Exclusion III(K) is [i]napplicable"[33] SS&C argues that no portion of the settlement is attributable to the CUTPA claims.[34] SS&C further contends that ACM sought attorneys' fees under both its CUTPA and negligent misrepresentation claims.[35]

Endurance disagrees. Endurance argues that summary judgment may not be granted when there is a material factual dispute,[36] Connecticut law governs this dispute,[37] and that SS&C has failed to establish liability as to breach of contract as a matter of law.[38]

## IV. STANDARDS OF REVIEW

### A. MOTION TO DISMISS

In this instance, the granting of dismissal or a stay rests within the sound discretion of the trial court.[39] When determining whether a suit should be stayed or dismissed for *forum non conveniens*, Delaware courts apply different standards depending on the circumstances.[40] Where two cases are filed contemporaneously, or the Delaware case if filed first, or there is no other pending action, the Court examines the motion under the traditional *forum non conveniens*

---

[30] Mot. for Partial Summ. J. at p. 12.
[31] *Id.* at p. 12.
[32] *Id.* at p. 14.
[33] *Id.* at p. 16.
[34] *Id.*
[35] *Id.* at p. 18.
[36] *Id.* at p. 7
[37] *Id.* at p. 9
[38] *Id.* at p. 11
[39] *BP Oil Supply Co. v. Conoco Phillips Co.,* 2010 WL 702382, at \*2 (Del. Super. 2010).
[40] *See Gramercy Emerging Markets Fund v. Allied Irish Banks*, P.L.C., 173 A.3d 1033, 1036 (Del. 2017).

framework, applying the factors set forth in *Cryo-Maid* under an "overwhelming hardship" standard.[41]

But, "[i]f the foreign action is the first-filed action, principles of fairness, comity, judicial economy and the possibility of inconsistent results generally favor the granting of a stay."[42] Where the Delaware action is the second-filed to the foreign action, the Court will conduct an analysis under *McWane*.[43] Under *McWane*, Delaware courts generally defer to a case filed first in time in another forum as long as that action involves substantially the same parties and issues as the litigation pending in Delaware.[44]

### B. SUMMARY JUDGEMENT MOTION

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgement is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[45] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law. [46] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted. [47] The moving party bears the

---

[41] *Gen. Foods Corp. V. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964); *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014) (citing *Ison v. E.I. DuPont de Nemours & Co., Inc.*, 729 A.2d 832, 835 (Del. 1999)).

[42] *Rapoport v. Litig. Tr. of MDIP Inc.*, 2005 WL 3277911, at *2 (Del. Ch. Nov. 23, 2005) (internal quotations omitted).

[43] *McWane Cast Iron Pipe Corp.v. MCDowell-Wellman Engr. Co.*, 263 A.2d 281, 283 (Del. 1970).

[44] *BP Oil Supply Co.*, 2010 WL 702382, at *2.

[45] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[46] *Id*.

[47] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

initial burden of demonstrating that the undisputed facts support his claims or defenses.[48] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact finder.[49]

## V. DISCUSSION

### A. THE COURT WILL DENY THE MOTION TO DISMISS

#### i. *McWane Analysis*

In the present matter, the Court's decision of whether or not to apply *McWane* and therefore whether or not to proceed to the *Cryo-Maid* analysis hinges upon whether a prior action was filed. Endurance contends that the Connecticut Action is first filed.

Endurance filed the Connecticut Action on January 9, one day before SS&C filed its Complaint. While true that Endurance's action technically appears before SS&C's chronologically, SS&C highlights an important procedural point in its Opposition. SS&C writes: "[T]he instant action was filed less than an hour after Endurance served SS&C with the complaint in the Connecticut Action-indicating that the Breach of Contract Action complaint was essentially complete and was set to be filed virtually simultaneously with the Connecticut Action."[50]

This Court has held that an anticipatory declaratory judgment filing "will not be entitled to the deference typically afforded to first-filed actions."[51] Endurance rejects the characterization of its suit as anticipatory, and instead contends that SS&C was well aware of its

---

[48] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[49] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[50] Pl.'s Opp., 18.
[51] *Lincoln Benefit Life Co. v. Wilmington Trust, N.A.*, 2018 WL 3640898, at *3 (Del. Super. July 31, 2018) (citing *Natl. Union Fire Ins. Co. of Pittsburg, PA* 2014 WL 703808, at *3).

intent two months prior to the filing but did not initiate this action until after the Connecticut Action. The Court finds that the Connecticut Action is clearly an anticipatory action.[52]

Endurance was not facing a decision on whether to defend an action it contended was not indemnifiable—*i.e.*, a scenario where Endurance needed to file a declaratory judgment action in order to avoid a bad faith claim. At the time that Endurance acted in Connecticut, Endurance had already advanced defense costs and denied coverage. Endurance could have waited to see if SS&C would accept this or initiate a breach of contract action. There was no pressing need to act.

Moreover, this action and the Connecticut Action were filed just a day apart. The filings are contemporaneous. The Connecticut Superior Court came to the same conclusion:

> One factor that does not affect the decision in this case is whether the foreign suit was filed first and initiated to forestall the domestic suit. It appears that both sides raced to the courthouse and filed their actions at about the same time. Any slight difference in filing times is insignificant.[53]

Accordingly, the Court holds that *McWane* does not apply.

### ii. *Cryo-Maid Analysis*

The six factors established in Cryo-Maid are: (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would made the trial of the case easy, expeditious and inexpensive.[54]

---

[52] The Connecticut Superior Court made a similar filing.
[53] D.I. No. 31, Ex. A at 1.
[54] Martinez v. E.I. DuPont de Nemours & Co., Inc., 86 A.3d 1102, 1104 (Del. 2014) (quoting *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964).

11

The Court finds that, under the *Cyro-Maid* analysis, Delaware is not an inconvenient forum. The Court does not believe Connecticut is either but the Court cannot dismiss this action under *Cyro-Maid* merely because Endurance filed a declaratory judgement action one day before SS&C filed this action. Importantly, Endurance cannot meet the "overwhelming hardship" standard.[55]

Delaware may not be the most convenient forum. Witnesses are located in Connecticut and SS&C's principal place of business is in Windsor, Connecticut. SS&G is a Delaware corporation and chose to litigate in Delaware on the Policy. Endurance, as alleged, is also a Delaware corporation. Endurance is headquartered in New York and not Connecticut. Modern litigation tools—video depositions, etc.—will allow the parties to complete discovery and litigate this matter. The Court, however, cannot close this forum to Delaware corporations merely because witnesses or other parts of the litigation will be occur elsewhere on the East Coast.

The parties spent a great deal of time arguing choice of law. The Court is not persuaded that this is an inconvenient forum merely because Delaware, New York or Connecticut law applies. The Court and the Connecticut Superior Court are both capable of applying the laws of these jurisdictions, especially when there is no substantial difference in the application of insurance contract law among the jurisdictions.

Endurance is a Delaware corporation operating in New York. All documents and witnesses are readily available. The law to be applied is not controversial. There is no need to view any premises. The *Cyro-Maid* factors do not support an argument that Delaware is an inconvenient forum. While the Court would rather have the parties chose to proceed in only one

---

[55] *Gen. Foods Corp. V. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964); *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014) (citing *Ison v. E.I. DuPont de Nemours & Co., Inc.*, 729 A.2d 832, 835 (Del. 1999)).

location, the Court cannot, under this fact pattern, dismiss this civil proceeding under a traditional *forum non conveniens* framework. For these reasons, the Motion to Dismiss is **DENIED**.

### B. THE COURT HOLDS THAT ENDURANCE HAS, AT LEAST IN PART, BREACHED THE POLICY AND WILL GRANT IN PART AND DEFER IN PART THE SUMMARY JUDGMENT MOTION[56]

Applying Connecticut and Delaware contract law regarding insurance policies, the Court does not, at this stage, find that the Policy is ambiguous. Accordingly, the Court will **GRANT** in part and **DEFER** in part the Summary Judgment Motion.

Insurance policies "are construed as a whole, to give effect to the parties' intentions."[57] In other words, the Court is to interpret the insurance policy through a reading of all of the relevant provisions of the contract as a whole, "and not on any single passage in isolation."[58] Moreover, an interpretation that gives effect to all the terms of an insurance policy is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive.[59] The Court is also to interpret an insurance policy in a manner that does not render any provisions "illusory or meaningless."[60]

Where the language of an insurance policy is "clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[61] Ambiguous insurance policy language is construed in the insured's favor—*i.e.*, under the

---

[56] For purposes of the Summary Judgment Motion, the Court will expand the record and utilize the affidavits filed by the parties.

[57] *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007). *See also Enfield Pizza Palace, Inc. v. Ins. Co. of Greater N.Y.*, 755 A.2d 931, 935 (Conn. App. Ct. 2000) (citing *Levine v. Advest, Inc.*, 714 A.2d 649, 660 (Conn. 1998)).

[58] *O'Brien v. Progressive Northern Ins.*, 785 A.2d 281, 287 (Del. 2001). *See also Karas v. Liberty Ins. Corp.*, 228 A.3d 1012, 1020 (Conn. 2019).

[59] *O'Brien,* 785 A.2d at 287.

[60] *O'Brien,* 785 A.2d at 287 (quoting from *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. Super. 1992)).

[61] *Faraday Capital Ltd.*, 918 A.2d at 1108. *See also Karas*, 228 A.3d at 1020 (citing *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 84 A.3d 1167, 1173 (Conn. 2014)).

doctrine of *contra proferentem*, the language of an insurance policy must be construed most strongly against the insurance company that drafted the policy.[62] An insurance policy is ambiguous when the provisions at issue "are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[63] An insurance policy is not ambiguous merely because the parties do not agree on the proper construction.[64]

Coverage language is interpreted broadly to protect the insured's objectively reasonable expectations.[65] Exclusionary clauses, on the other hand, are "accorded a strict and narrow construction."[66] Even so, courts will give effect to exclusionary language where it is found to be "specific," "clear," "plain," "conspicuous" and "not contrary to public policy."[67] The Court also recognizes that case law exists that permits judicial application of the reasonable expectation doctrine to fulfill an insured's expectations even where those expectations contravene the unambiguous, plain meaning of exclusionary clauses.[68]

The Court has discussed the *Armour* Action in general terms above. For purposes of the Summary Judgment Action, the Court will consider additional facts provided through affidavit.

---

[62] *O'Brien*, 785 A.2d at 288; *see also R.T. Vanderbilt Co., Inc. v. Hartford Accident and Indem. Co.*, 216 A.3d 629, 641 (Conn. 2019).

[63] *Weiner,* 793 A.2d at 440*; see also Karas*, 228 A.3d at 1020(citing *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 84 A.3d 1167, 1173 (Conn. 2014))..

[64] *O'Brien*, 785 A.2d at 288; s*ee also Rumbin v. Utica Mut. Ins. Co.*, 757 A.2d 526, 540 (Conn. 2000).

[65] *AT&T Corp. v. Clarendon Am. Ins. Co.*, 2006 WL 1382268, at *9 (Del. Super. April 25, 2006), *rev'd in part on other grounds*, *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104 (Del. 2007). *See also R.T. Vanderbilt Co., Inc.,* 216 A.3d at 641.

[66] *AT&T Corp.,* 2006 WL 1382268, at *9; s*ee also R.T. Vanderbilt Co., Inc.,* 216 A.3d at 641..

[67] *Id.*

[68] *Id.* at *9, n. 123 (citing and reviewing cases that utilized the "reasonable expectation doctrine"). *But see Empire Fire & Marine Ins. v. Lang*, 655 F.Supp.2d 150, 153 n.2 (D.Conn. 2009) (citing and reviewing cases that mention the reasonable expectations doctrine); *see also Nunn v. Mass. Cas. Ins. Co.*, 758 F.3d 109, 117 (2d Cir. 2014) ("Connecticut, however, does not follow Pennsylvania's version of the reasonable expectations doctrine," which allows insurance contract reformation.).

ACM asserted claims for breach of the services agreement, violation of the CUTPA, intentional and negligent misrepresentation, and rescission of the services agreement as an alternative remedy to damages.[69] ACM alleged, in part, that SS&C's misrepresentations induced ACM to enter into the services agreement.[70] For each of its claims, ACM sought "no less than $2.28 million, together with pre- and post-judgment interest, punitive damages, and attorney's fees and costs."[71] ACM requested the recovery of damages that included the amount of fees paid to SS&C, as well as additional damages for lost employee time.[72]

On March 16, 2018, United States District Judge (the "District Court Judge") dismissed ACM's claim for intentional misrepresentation but denied SS&C's request to dismiss ACM's claims for breach of contract and negligent misrepresentation.[73] The District Court Judge also dismissed ACM's CUTPA claim in part, but held that the CUTPA claim could proceed to the extent that the claim relied on negligent misrepresentations.[74]

On September 11, 2019, the District Court Judge granted summary judgment in favor of SS&C on the breach of contract claim but denied summary judgment with regard to ACM's claims for negligent misrepresentation, violation of the CUTPA, and rescission.[75] The District Court Judge found that the breach of contract claim could not go forward because ACM had received full compensation from ACM's clients for the fees it had paid SS&C.[76] As such, ACM

---

[69] Smith Aff., Ex. B.
[70] Id.
[71] Smith Aff. at ¶¶59, 66, 71, and 77.
[72] Id. at ¶¶57, 64, 70, and 76.
[73] See id., Ex. C.
[74] Id.
[75] See id., Ex. D. See also ARMOUR Capital Mgmt. LP v. SS&C Technologies, Inc., 407 F.Supp. 3d 98 (D. Conn. 2019).
[76] Id. ("In short, ACM has already been made whole for the fees it paid SS&C, and therefore it cannot show damages as to this aspect of its contract claim…All in all, I will grant summary judgment for SS&C on ACM's contract claim because there is no genuine fact issue to show that ACM sustained damages that are subject to recovery by means of a breach of contract claim.").

had been made whole for the fees ACM had paid SS&C.[77] The District Court Judge allowed the negligent misrepresentation claim to go forward because of the possibility that ACM suffered damages due to SS&C's possible negligent misrepresentations.[78] The District Court Judge also held that the CUTPA claim and claim for rescission could go forward to the extent the claims are predicated on the claim for negligent misrepresentation.[79]

The *Armour* Action settled on the eve of trial. ACM and SS&C entered into the Settlement. The Settlement is confidential. At the time of settlement, ACM continued to press a CUPTA claim and, possibly, could have appealed its claims relating to reimbursement of fees paid to SS&C. Despite Endurance's claims, Endurance has not provided the Court with any facts that show collusion between ACM and SS&C against Endurance's interest when negotiating the Settlement in how the Settlement.

At first, it appears that two provisions under Section II, Item H, of Endorsement 14[80] might conflict: covered damages ("compensatory sums" and "monetary settlements") and excluded damages ("the return, reduction or restitution of fees, commissions, royalties, expenses or costs for Professional Services of Technology Services performed or to be performed by the Insured."[81]). However, compensatory damages are distinct from restitution.

"The principal distinction between compensatory damages and restitution is that compensatory damages respond to the plaintiff's loss, restitution to the defendant's gain."[82]

---

[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] Compl., Ex. A-D (Use Ctrl F to find it, it's buried).
[81] *Id.*
[82] Doug Rendleman, *Measurement of Restitution with Compensatory Damages and Punitive Damages*, 68 WASH. & LEE L. REV. 973 (2011) (citing to 1 DAN B. DOBBS, LAW OF REMEDIES: DAMAGES—EQUITY—RESTITUTION 555 (2d ed. 1993) ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle form damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss.")).

16

Under the terms of the Policy, it appears that any amounts in the Settlement allocated to a return of fees and costs for services rendered (or to be rendered) are excluded from coverage. However, any amounts in the Settlement allocated to damages incurred by ACM as a result of SS&C's negligence will be covered under the Policy. The "bare" factual question seems to be if any of the Settlement can plausibly be *allocated* to: (i) "return, reduction or restitution of fees" paid by ACM to SS&C or (ii) Section III(K) of the Policy relating to the exclusion for "any Damages or Claims Expense based upon, arising out of, attributable to or involving directly or indirectly . . . any actual or alleged false, descriptive or unfair business practices or any violation of consumer protection laws"—*i.e.*, the remaining CUPTA claim.[83]

The rulings in the *Armour* Action removed all but the negligent misrepresentation claims. The *Armour* Action court also limited the CUPTA claim. The Court will grant the Summary Judgment Motion as it applies to any contention by Endurance that the Policy entirely excludes indemnification in connection with the *Armour* Action. Endurance breached the Policy by failing to indemnify any portion of the Settlement that concerns other types of Damages incurred by SS&C. After reading the *Armour* Action decision, the Court believes that allocation, if any, to non-indemnifiable parts of the Settlement would be minor given ACM's remaining claims prior to trial.

The Court harbors some reservations that the record is complete enough to grant summary judgment as to the cost of the entire Settlement. Allocation may remain an issue.[84] As such, the Court will allow SS&C and Endurance to engage in limited discovery on allocation. The discovery should be limited to the issue of allocation as it relates to the Fee Carve out and

[83] The Court is not, at this time, deciding whether "negligent misrepresentation" claims under CUPTA even qualify as "actual or alleged false, descriptive or unfair business practices" in violation of CUPTA.
[84] The parties have not addressed, or briefed, how allocation is handled under the terms of the Policy.

ACM's remaining CUPTA claim. The period of discovery is to last no longer than sixty (60) days. At the end of discovery, the Court will hold a status conference to schedule additional, if any, briefing on the issue of allocation. The Court asks the parties to engage in focused discovery. The Court will stay any "fishing expeditions" and use sanctions if necessary. The only remaining question is whether any of the Settlement can be allocated to the Fee Carve-Out and the CUPTA claim.

## VI.   CONCLUSION

For all the foregoing reasons, the Motion to Dismiss is **DENIED** and the Summary Judgment Motion is **GRANTED** in part and **DEFERRED** in part.

Dated: October 29, 2020
Wilmington, Delaware


*/s/ Eric M. Davis*
Eric M. Davis, Judge


cc: File&ServeXpress

18